UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:08-CV-32-M**

**EDNA ELLEN EDGE and**
**ROBERT EDGE, SR.**                                                **PLAINTIFFS**

**V.**

**WAL-MART STORES EAST, LP**                                      **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on (1) Defendant's motion for summary judgment on Plaintiffs' claims for negligence and loss of consortium, and (2) Defendant's motion in limine to exclude Plaintiffs' proposed expert testimony. Fully briefed, the matter is ripe for decision. For the reasons that follow, Defendant's motion for summary judgment is **GRANTED** and its motion in limine is **DENIED** as moot.

**I. BACKGROUND**

On January 2, 2008, Edna Edge went shopping at Wal-Mart store #701 on Frederica Street in Owensboro, Kentucky. Her husband, Robert Edge, waited in the truck. After shopping, Mrs. Edge exited the store from the main entrance, pushed her cart out toward the edge of the sidewalk, and waited for her husband to pick her up. He drove his truck up to the curb and parked. She then began to load the groceries. After making two trips to the rear of the truck, Edna decided to place her milk and water in the front

1

because it was cold outside and she did not want them to freeze. With a six-pack of water in hand, she stepped down off of the curb, slipped on some ice, and had her feet slide under the truck striking the chassis and seriously injuring her right ankle.

The ice that Edna slipped on was "black" in color, but far darker than the surrounding pavement. (Neil Rumohr deposition, Ex. 5, 6, 7). She acknowledges that she would have seen it if she "had looked where it was." (Edna Edge deposition, pp. 34-35, 38). Mrs. Edge describes the ice patch as the size of "a good size meat platter"; she also says that there was some "white stuff" on the sidewalk and surrounding areas that looked "almost like [dried] milk," so she "assumed that they had put something down." (Edna Edge deposition, pp. 31-32). On the other hand, Wal-Mart's photgraphs show that the patch of ice was much smaller than Edna remembers, and Wal-Mart's employees have testified that they did not apply salt, sand, or other ice melt that morning and that there was no remnant of such products on the sidewalk or parking lot.

## II. STANDARD OF REVIEW

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter

must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Defendant argues that it is entitled to summary judgment because it was not under a duty to protect Plaintiff from the ice in its parking lot that was as obvious to her as it was to Wal-Mart. Plaintiffs counter that it was not the ice that was the hazard, but the slight depression in the parking lot that Wal-Mart negligently permitted to exist; Wal-Mart's negligent application of ice melt on January 2, 2008; or Wal-Mart's application of ice melt on some earlier date that directed snow or ice from the sidewalk to the shallow depression where it froze. Defendant also seeks to exclude Plaintiffs' expert testimony because Schroering is not qualified to give "opinions concerning parking lot design and safety" and because his proferred opinions are not based on any "scientific, technical, or specialized knowledge" such that they will assist the jury. (Defendant's Limine Brief, pp.

3, 6). The Court considers these arguments in turn.

A.

To establish a prima facie case of negligence, Plaintiffs must prove that Defendant (1) had a duty; (2) breached that duty; (3) the breach was the proximate cause of Plaintiffs' injuries; and (4) those injuries resulted in damages to the Plaintiffs. Helton v. Montgomery, 595 S.W.2d. 257, 258 (Ky. Ct. App. 1980). A failure to establish any one of these elements is fatal to the claim. M & T Chemicals, Inc. v. Davis, 525 SW2d 740, 741 (Ky. 1974). Here, Defendant argues that it did not have a duty to the Plaintiffs because "the owner of a business premises has no duty to protect invitees from injuries caused by 'natural outdoor hazards which are as obvious to an invitee as to an owner of the premises.'" Horne v. Precision Cars of Lexington, Inc., 170 S.W.3d 364, 368 (Ky. 2005) (quoting Standard Oil Co. v. Manis, 433 S .W.2d 856, 858 (Ky. 1968); see also Gaff v. Johnson Oil Co., 45 Fed. Appx. 499, 501 (6th Cir. 2002) (explaining that "Kentucky law is not generous to business invitees who suffer an injury as a result of a risk created by an obvious, outdoor natural condition such as ice.").

Plaintiffs contend that this rule does not apply because the hazard Edna injured herself on was not "natural," i.e., the "ice was caused by water pooling in an area that had been negligently maintained by the defendant." (Plaintiffs' Response, pp. 13-14). To the extent Plaintiff is arguing that the hazard was not natural because Wal-Mart allowed a slight depression with an incline of one or two degrees to form in its parking lot such that rain or snow could freeze where it did, the Court finds the argument untenable. The

reason is that such a holding would eviscerate Kentucky's "no duty rule" since virtually every unevenness in outdoor surfaces would transform natural hazards like ice into an unnatural hazards. Estep v. B.F. Saul Real Estate Inv. Trust, 843 S.W.2d 911, 913 (Ky. Ct. App. 1992); cf. Caudill v. Wal-Mart, 2006 WL 1464793 (E.D. Ky. 2006) (finding that a hazard was "natural" for purposes of Kentucky law where the claim was that Wal-Mart was negligent for failing to warn or protect a plaintiff against ice that "was essentially a frozen over puddle" because "had Wal-Mart maintained the parking lot properly, with proper drainage, there would not have been a puddle in the first place.").

Even so, in order for Wal-Mart to avoid having a duty to the Plaintiff, the hazard must also have been "as obvious" to its invitees as it was to Wal-Mart. "[T]he term 'obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence and judgment." Bonn v. Sears, Roebuck & Company, 440 S.W.2d 526, 529 (Ky. 1969) (citing Restatement of the Law of Torts (Second) §§ 343 and 343A (1965)). Viewing the evidence in the light most favorable to the Plaintiffs, the Court concludes that a reasonable person exercising ordinary judgment would have discovered the icy condition. The record shows that Mrs. Edge slipped and fell during daylight hours when it was below freezing outside; the pictures taken immediately after the accident indicate that the ice was readily observable; and, most importantly, Edna acknowledges that there was nothing to stop her from seeing the ice if she "had looked where it was." (Edna Edge deposition, pp. 34-35, 38).

But the analysis does not end here. Plaintiffs also contend that Wal-Mart affirmatively created the hazard by negligently applying ice melt such that it caused water to collect in the crosswalk and freeze, i.e., "when [Wal-Mart] put the salt out and melted the ice, it ran down the side of the sidewalk into the depression." (Edna Edge deposition, p. 54). Despite Kentucky's "no duty" rule, a duty voluntarily assumed cannot be carelessly undertaken. See PNC Bank, Kentucky, Inc. v. Green, 30 S.W.3d 185, 187 (Ky. 2000); Louisville Cooperage Co. v. Lawrence, 230 S.W.2d 103, 105 (Ky. 1950) (stating the general rule that duties "voluntarily assumed," as with other duties, cannot be carelessly undertaken without incurring liability) (citing Glanzer v. Shepard, 135 N.E. 275, 276 (N.Y. 1922) (explaining that "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.")).

Wal-Mart's employees have testified that no salt, sand, or other ice melt was present on or applied to the parking lot or sidewalk on January 2, 2008, prior to Mrs. Edge's slip and fall. (Nugent deposition, pp. 20-21; Wilkes deposition, p. 15). Plaintiffs, on the other hand, argue that there is a genuine issue of material fact that makes this question suitable for trial because one Wal-Mart employee "did not know if any ice melt was used on the parking in the 24 hours before Mrs. Edge fell" and because Mrs. Edge testified that "when [she] first went into the store there was white stuff all around the door and down the sidewalk . . . . [and she] just assumed that they had put something down." (Nugent deposition, pp. 21; Edna Edge deposition, pp. 31-32). Wal-Mart, in reply, argues

that the photographs it took immediately after the accident conclusively establish the truth of its employees' testimony that there was no ice melt or residue present at the time of Edna's slip and fall. This dispute, whether genuine or not, is ultimately immaterial.

Assuming ice melt was applied, there is a distinction between "a business owner [who] undertakes reasonably prudent measures to increase the safety of premises . . . and a business owner who undertakes measures which, in fact, heighten or conceal the nature of the dangerous condition . . ." PNC Bank, Kentucky, Inc. v. Green, 30 S.W.3d 185, 187 (Ky. 2000). Here, there is no evidence that ice melt, if applied, was applied in a way that concealed the danger since, as the Court concluded above, the danger was obvious. In addition, there is no evidence that the ice melt, if applied, otherwise heightened the danger. Although Plaintiff suggests that the application of ice melt created the hazard, this is pure speculation. Plaintiff's expert has expressed no opinion on how the moisture got into the depression: "I don't know . . . it doesn't affect my opinion. The ice was there, and I'm basing my opinions on that. Now, how it got there, whether through melting snow or whatever, I don't know . . . . I just know that there was a dangerous surface there." (Schroering deposition, pp. 41-42). Accordingly, the Court will grant Wal-Mart's motion for summary judgment.

B.

Having found that summary judgment in favor of Defendant is appropriate, the Court will deny Defendant's motion in limine to exclude Plaintiff's proposed expert testimony as moot.

7

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** and its motion in limine is **DENIED** as moot. Judgment will be entered consistent with this Opinion.

cc. Counsel of Record